UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANIEL P. HARGROVE,

    Plaintiff,

v.

CAPT. FRISBY, et al.,

    Defendants.

Case No. 1:17-cv-748

Dlott, J.
Bowman, M.J.

# REPORT AND RECOMMENDATION

**I. Background**

On November 7, 2017, while still incarcerated at the Lebanon Correctional Institution, Plaintiff filed this §1983 action against various LeCI officials and employees, including Defendants Capt. Frisby, Lt. Couch, Chaplin Taylor, and Chaplin Palmer, as well as the LeCI Warden and Correctional Officer Whitlow. On December 27, 2017, Plaintiff moved to amend his complaint to add, as an additional Defendant, Mr. Tom Schwietzer. (Doc. 7).

On initial screening of both the complaint and the tendered amendment under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), this Court dismissed all claims against the Warden and C/O Whitlow, denied the proposed amendment to add Defendant Schwietzer, and dismissed multiple claims against the other Defendants. At the same time, the Court determined that the following claims could proceed: "[P]laintiff's Fourth Amendment individual capacity claim against defendants Frisby and Couch and plaintiff's First Amendment individual capacity Free Exercise claim and, to the extent it seeks

1

injunctive relief, plaintiff's RLUIPA claim against defendants Chaplain Taylor and Chaplain Palmer.

The remaining Defendants have filed a motion to dismiss the referenced claims for failure to state a claim, pursuant to Rule 12(b)(6). (Doc. 18). In addition, based upon Plaintiff's recent release from incarceration and change of address to a private residence, Defendants have moved to vacate this Court's prior order granting Plaintiff in forma pauperis status, pending a new determination of his pauper status. (Doc. 17). In addition to responding to Defendants' motions, Plaintiff has filed new motions to add at least one new claim and another Defendant, as well as two motions for monetary judgment. (Docs. 13, 14, 20).

For the following reasons, the undersigned recommends that Defendants' motion to dismiss be granted, and that all other motions be denied as moot. Alternatively, should the recommendation that this case be dismissed be rejected by the presiding district judge, Defendants' motion to revoke Plaintiff's pauper status pending a new determination should be granted.

**II. Analysis**

**A. Standard of Review for Motion to Dismiss**

Defendants' motion to dismiss has been filed under Rule 12(b)(6), prior to the commencement of any discovery. In considering the motion, the Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007). Based upon liberal pleading standards under Rule 8 and the standard

of review, it is far more common for cases to be disposed of on motions for summary judgment, following a period of discovery, than on Rule 12(b)(6) motions to dismiss. Nevertheless, where a defendant has filed a well-supported and meritorious motion to dismiss that clearly illustrates that the plaintiff has failed to state a claim, the motion will be granted. Having considered Defendants' well-supported motion in this case, together with Plaintiff's response and Defendants' reply, the undersigned concludes that the motion should be granted.

### B. Defendants' Motion to Dismiss

#### 1. Fourth Amendment Claim

Plaintiff brings a Fourth Amendment claim against Defendants Frisby and Couch based upon a "body cavity strip search" that he was subjected to on the evening of October 18, 2017:

> [Plaintiff] was walking down the hallway coming from dinner and was subject to a body cavity strip search because a guy was talking too loud in the hallways when the guy told the Capt. it was him, I was still subject to and body cavity search which violated the 4th Amendment's illegal search rule… [Plaintiff] contends as he was trying to leave he was called back by Lt. Couch to be cavity searched after he was already searched and after the guy told the Capt[.] he[']s the one who was talking loud.
>
> [Plaintiff] contends the cavity searches was unreasonable and was sexual harassment and was unreasonable suspicion and the male officers promote homosexual activity….

(Doc. 1 at 1).

The Fourth Amendment to the United States Constitution protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. However, what is "unreasonable" under the Fourth Amendment depends on context. Thus, normally invasive practices, like requiring inmates to expose their body cavities for visual

3

inspection, are permissible when inside prison walls. *Bell v. Wolfish*, 441 U.S. 520, 537, 99 S. Ct. 1861, 1873 (1979) (finding searches reasonable under the Fourth Amendment).

Defendants persuasively argue that Plaintiff's allegation that he was searched "because a guy was talking too loud in the hallway" gives rise to a reasonable inference that Plaintiff was targeted for the searches based on the Defendants' belief that Plaintiff was involved in some form of potential rule violation or loud disturbance. Indeed, it is clear that Plaintiff's primary complaint is that the Defendants should not have searched him at all, because the grounds for the search was a disturbance being caused by a *different* inmate in the same vicinity as Plaintiff. Plaintiff objects because the Defendants searched him even though the inmate who had committed the disturbance spoke up and told Defendant Captain Frisby that "it was him." In his response in opposition to Defendants' motion, Plaintiff maintains that "strip searches on state detainees charged with minor offenses" are constitutionally prohibited "absent reasonable suspicion." (Doc. 20 at 1). Thus, Plaintiff confirms that his claim is premised upon his being subjected to a strip search "absent reasonable suspicion." Plaintiff also more generally argues that the prison's search policy was "an abuse of policy." (*Id.*) Last, Plaintiff complains that the Defendants engage in "uncalled for illegal strip searches for minor infractions." (*Id.* at 2).

Unfortunately for Plaintiff, the case law on which he relies is not controlling, and is clearly distinguishable because it pertains to the rights of individuals who have not been convicted of any offense and/or those charged with misdemeanor offenses.[1] Plaintiff's privacy rights are more circumspect because he is not a pretrial detainee, but a convicted

---

[1] In addition, one of the cases cited by Plaintiff, *Smook v. Minnehaha County*, 340 F. Supp.2d 1037 (D.S.D. 2004), was reversed and remanded by the Eighth Circuit. *See Smook v. Minihaha County*, 457 F.3d 806 (2006).

felon who was subjected to a search while incarcerated in a state prison.  Within the latter classification, the Supreme Court has given correctional officers wide latitude "to devise reasonable search policies to detect and deter the possession of contraband in their facilities."  *Florence v. Bd. of Chosen Freeholders of Cnty. Of Burlington*, 132 S. Ct. 11510, 1517 (2012); *see also Stoudemire v. Mich. Dept. of Corr.*, 705 F.3d 560, 573-74 (6th Cir. 2013) (applying principles of *Florence* to an individual search, and holding that "[a]bsent proof to the contrary, we must assume that a search of a prisoner is initiated in an effort to detect and deter contraband.").   Under *Florence*, reasonable suspicion is not required for visual body cavity searches of convicted felons.  *Cf. Stoudemire*, 705 F.3d at 575 ("[S]uspicionless strip searches [are] permissible as a matter of constitutional law, but only so long as they [are] reasonable under the circumstances….").  Thus, the mere fact that Plaintiff was subjected to such a suspicionless search is not sufficient to state a claim under 42 U.S.C. §1983.

This Court is limited to consideration of Plaintiff's complaint, and recognizes that a body cavity search is inherently intrusive.   In his response in opposition to Defendants' motion to dismiss, Plaintiff asserts that the Defendants "promote homosexual activity" and that their "strip-search policy was an abuse of power."  (Doc. 21 at 1).  Critically, however, Plaintiff does not complain that the search of his person under that allegedly abusive policy was conducted in an overly intrusive manner, or in a place where he was overly exposed to public view.  *Contrast Stoudemire,* 705 F.3d at 575 (double amputee female inmate stated claim for "humiliating strip search in full view of several (or perhaps many) others"); *see also Salem v. Mich. Dept. of Corrections*, 643 Fed. Appx. 526 (6th Cir. 2016) (defendant not entitled to qualified immunity where strip search of female inmates

required them to sit on an unwashed chair wet with bodily fluids from other prisoners, and spread their labia in full public view of others, without a legitimate penological justification for public and unsanitary conditions).

Rather than complaining about some unusual manner of the search, Plaintiff mistakenly asserts that <u>any</u> suspicionless search violates the Fourth Amendment. Thus, he alleges in a conclusory fashion that the Defendants conduct unreasonable strip searches for only "minor infractions." Plaintiff's allegations are insufficient to state a claim under the Fourth Amendment in light of *Florence*, particularly given his acknowledgement that the Defendants conducted the search based upon a loud disturbance in close proximity to Plaintiff. The fact that Defendants chose to search Plaintiff despite the allegedly "minor" nature of the perceived infraction, and/or the confession of a different inmate that he was responsible for the disturbance, does not transform the search into a violation of the Fourth Amendment, because correctional officers are given wide discretion to search, and Defendants were not required to take the other inmate's confession at face value.

### 2. First Amendment Free Exercise Claim and Claim for Injunctive Relief Under RLUIPA Against Chaplains Taylor and Palmer

Plaintiff next asserts that Defendant Chaplains Taylor and Palmer violated both the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) when they refused to allow him to attend a particular religious service for "about 3 months" based upon Plaintiff's temporary housing placement in a "disciplinary dorm." (Doc. 1 at 1). Specifically, Plaintiff alleges that he wrote Defendant Taylor several informal grievances, known as "kites," in which Plaintiff sought permission to be put on "the Jumuah and Taleem list," but that he was informed that because he was in a disciplinary

6

dorm, he was not permitted to attend one of those services: Taleem.[2] Plaintiff alleges that he made the same request of Defendant Palmer, but that Palmer also told him he could not attend Taleem based upon his being housed in a disciplinary dorm, but that he could only attend the "Jumuah" service. (Doc. 1 at 2). The decision to permit Plaintiff to attend only one of the two services appears to have been based in part upon a "rule" that inmates in disciplinary segregation at LeCI are permitted to attend only one group service per week. Plaintiff complains that the Chaplains "should scrap the rule because the Christians get to go to all services and they are in the same dorm." (*Id.* at 2).

### a. Plaintiff's RLUIPA Claim is Moot

On initial screening, this Court dismissed Plaintiff's claim for monetary damages under the RLUIPA, but permitted his claim for injunctive relief to proceed, to the extent Plaintiff sought to "scrap the rule." Because Plaintiff has now been released from incarceration, his RLUIPA claim for injunctive relief is now moot and must be dismissed.

### b. Plaintiff Fails to State a Claim Under the First Amendment

The Free Exercise Clause to the First Amendment to the United States Constitution provides that "Congress shall make no law ... prohibiting the free exercise [of religion]...." Prisoners retain the right to a reasonable opportunity to exercise their religious beliefs. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081 (1972). On the face of the complaint, Plaintiff acknowledges that he was permitted to exercise his religion, including through attendance at a weekly service. His primary complaint is that he was not permitted to attend a second weekly service during the period of time in which he was housed in disciplinary segregation.

---

[2] The spelling of the names of the two services varies in the case law, as reflected in some of the quotations herein. Other than case quotations, the spelling used by Plaintiff in his complaint will be used in this R&R.

7

In *Employment Div., Dept. of Human Resources of Ore. v. Smith,* 494 U.S. 872, 110 S.Ct. 1595 (1990), the Supreme Court held that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment. " *Holt v. Hobbs*, 135 S.Ct. 853, 859 (2015) (citing *Smith*, 494 U.S. at 878-882). Following *Smith*, Congress enacted both the Religious Freedom Restoration Act of 1993 (RFRA) and later, the RLUIPA, "in order to provide greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 135 S.Ct. at 859–60 (citing *Hobby Lobby,* 134 S.Ct. 2751, 2760–2761 (2014)).

Because Plaintiff's RLUIPA claim has been rendered moot by his release from incarceration, his remaining claim is not entitled to the greater protections offered by that statute. Instead, viewing Plaintiff's claim for monetary damages against the two Chaplains solely under the First Amendment, I recommend that his remaining claim be dismissed for failure to state a claim. Specifically, I conclude that Plaintiff has failed to allege that his Muslim faith was more than incidentally burdened for the three-month period in which he was housed in disciplinary segregation and permitted to attend only one of the two types of religious services offered to Muslims in other areas of the prison each week.

Unlike claims brought under the RLUIPA, the analysis of Plaintiff's First Amendment claim requires significantly more deference to prison officials' decisions impacting religious exercise. Thus, a prison regulation that impinges on a prisoner's right to exercise his religion will be upheld if it is reasonably related to a legitimate penological interest such as security, discipline, rehabilitation of prisoners, or other requirements relating to prison administration. *See Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254

(1987). In *Turner*, the Supreme Court established a four-factor test[3] to determine when a prison regulation that impinges upon a constitutional right is "reasonable." *See also Phelps v. Dunn,* 965 F.2d 93, 98 (6th Cir.1992).

In *O'Lone v. Estate of Shabazz*, 107 S.Ct. 2400, 482 U.S. 342 (1987), the Supreme Court applied *Turner* to hold that a policy that prevented Muslim inmates from attending a weekly religious service that was central to their faith did not violate the First Amendment:

> There are, of course, no alternative means of attending Jumu'ah; respondents' religious beliefs insist that it occur at a particular time. But the very stringent requirements as to the time at which Jumu'ah may be held may make it extraordinarily difficult for prison officials to assure that every Muslim prisoner is able to attend that service. While we in no way minimize the central importance of Jumu'ah to respondents, we are unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological objectives to that end. In *Turner,* we did not look to see whether prisoners had other means of communicating with fellow inmates, but instead examined whether the inmates were deprived of "all means of expression." *Id.,* at 92, 107 S.Ct., at 2263. Here, similarly, we think it appropriate to see whether under these regulations respondents retain the ability to participate in other Muslim religious ceremonies. The record establishes that respondents are not deprived of all forms of religious exercise, but instead freely observe a number of their religious obligations. The right to congregate for prayer or discussion is "virtually unlimited except during working hours," Tr. 182 (testimony of O'Lone), and the state-provided imam has free access to the prison. Muslim prisoners are given different meals whenever pork is served in the prison cafeteria. Special arrangements are also made during the month-long observance of Ramadan, a period of fasting and prayer. …We think this ability on the part of respondents to participate in other religious observances of their faith supports the conclusion that the restrictions at issue here were reasonable.

---

[3]The four factors are: (1) a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally" and (4) "the absence of ready alternatives." *Turner v. Safley,* 482 U.S. at 89–91, 107 S.Ct. at 2261–63.

*Id.,* 107 S.Ct. at 2406, 482 U.S. at 351–52. The Supreme Court's analysis of the *Turner* factors in *O'Lone* is instructive,[4] but is not definitive because the Defendants here seek dismissal under Rule 12(b)(6), prior to any development of the record.

Before reaching the *Turner* analysis, however, this Court is required to determine whether Plaintiff has adequately alleged that the Defendants substantially burdened the free exercise of his religion. *See O'Lone,* 482 U.S. at 348-349; *Cutter v. Wilkinson*, 544 U.S. 709, 722, 125 S.Ct. 2113 (2005). In other words, the threshold element of a free exercise claim requires an inmate to show that the government action actually infringes upon the free exercise of a religious belief. *See also generally Sherbert v. Verner,* 374 U.S. 398, 403–04, 83 S.Ct. 1790, 1793–94 (1963) (overruled in part by *Smith*). Importantly, the required threshold showing of an actual infringement is not satisfied unless the infringement amounts to a "substantial burden" on the exercise of the belief. As the Defendants put it, "[t]he First Amendment only protects conduct mandated by a particular faith. It does not protect optional practices." (Doc 18 at 5).

Nowhere in his complaint does Plaintiff allege that he was denied the opportunity to participate in religious practices that are central or mandatory for his religion. He was, indeed, permitted to attend Jumuah. In his response in opposition to Defendants' motion to dismiss, Plaintiff appears to confuse the allegations in his complaint and contend that he was denied the opportunity to attend Jumuah instead of Taleem, rather than the

---

[4]Unlike under the RLUIPA, in a First Amendment claim, the inmate retains the burden to disprove the validity of a prison regulation pursuant to the *Turner* analysis. *See Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162 (2003).

reverse.[5] Regardless, he continues to acknowledge that he was allowed to attend at least one of those weekly services.

Plaintiff's response in opposition to Defendants' motion suggests that the First Amendment prohibits any and all restrictions on his preferred religious practices while being housed in the prison's segregation unit.

> The plaintiff contends he was not allowed to attend Jumuah because the Imam that's contracted with the institution to do the services informed them that Jumuah was not mandatory and only Taleem was; see grievance he filed[.] The plaintiff contends state corrections officers could not violate the 1983 Free Exercise Clause because he was in a high-security area, and official's belief that refusal did not violate these rights, based solely on opinion of corrections system's religious authorities….

(Doc. 21 at 2).[6] Contrary to Plaintiff's suggestion, the First Amendment is not violated when a prison policy has only an incidental effect or merely causes an inconvenience to the exercise of the person's religion. *See Abdur-Rahman v. Michigan Dept. of Corrections*, 65 F.3d 489, 491 (6th Cir. 1995) (holding policy that prevented attendance at service did not violate First Amendment where it did not affect "an essential tenet" of Rahman's religious beliefs). Again, and in contrast to the broader protections offered by the RLUIPA, "the availability of alternative means of practicing religion is a relevant consideration" under the First Amendment. *Holt v. Hobbs*, 135 S.Ct. at 862. *See also generally*, *Graham v. Commissioner of Internal Revenue,* 822 F.2d 844, 850–51 (9th Cir.1987)(explaining that the First Amendment provides protection against burdens that pressure the religious person "to commit an act forbidden by the religion or by preventing

---

[5]Other courts have noted that, whereas Jumuah is a group prayer service that every Muslim is obligated to attend if possible, "Taleem is a religious study period that is generally held on a weekly basis though there is no religious obligation to attend." *Sharp v. Johnson*, 669 F.3d 144, 147 (3d Cir. 2012).

[6]Notwithstanding his reference to grievances, Plaintiff did not attach any administrative grievance documents to his complaint.

11

him or her from engaging in conduct or having a religious experience which the faith mandates.", *aff'd sub nom, Hernandez v. Commissioner of Internal Revenue,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148 (1989); *Werner v. McCotter,* 49 F.3d 1476, 1480 (10th Cir.1995); *Lovelace v. Lee,* 472 F.3d 174, 187 (4th Cir.2006)(defining substantial burden on religious exercise).

Under the First Amendment, only burdens on religious practices that are "central" or "essential" are constitutionally significant. *Id.; see also Blanken v. Ohio Dept. of Rehabilitation and Correction*, 944 F. Supp. 1359, 1364 (S.D. Ohio 1996) (noting "oft-cited" requirement that tenet be "central" and presumption that "a burden on an incidental religious belief or practice which holds little significance to a particular religious structure" would not violate the First Amendment); *Weir v. Nix*, 890 F. Supp. 769, 782–84 (S.D. Iowa,1995)(holding that plaintiff who failed to allege why one hour of group worship per week was insufficient, or how policies restricted the core tenets of his beliefs, failed to satisfy threshold *Turner* and *O'Lone* threshold requirement of an "actual infringement or substantial burden on the exercise of religion in order to establish a claimed violation of the Free Exercise Clause."); *cf., Livingston Christian Schools v. Genoa Charter Township*, 858 F.3d 996 (6th 2017)(defining "substantial burden" under the RLUIPA). Because Plaintiff's complaint, as amended, is devoid of allegations that the restriction to one group service per week actually and substantially burdened the free exercise of his religion, he has failed to state a First Amendment claim.

### 3. Qualified Immunity

All Defendants are also entitled to qualified immunity on all claims filed against them in their individual capacities. Even though dismissals on the basis of qualified

immunity are more frequently made on summary judgment, *see Grose v. Caruso*, 284 Fed. Appx. 279, 283 (6th Cir. 2008) (internal citations omitted), a dismissal may be granted under Rule 12(b)(6) where, as here, the Plaintiff's allegations fail to show that any Defendant violated any clearly established constitutional right of which a reasonable official should have known.

### a. Claim Against Defendants Frisby and Couch

No clearly established law prohibits prison officials from conducting visual strip searches on inmates without a more articulable "reasonable suspicion" than the investigation of a loud disturbance in the vicinity. Nor does any clearly established law prohibit such searches in the prison context for "minor offenses." Even if Plaintiff could prove that the Defendants violated prison policy, that would not show a violation of Plaintiff's Fourth Amendment rights, because there is no controlling Supreme Court precedent and a paucity of Sixth Circuit case law on the precise issues presented by this case. Because no controlling law exists that would have put the Defendants on notice that subjecting Plaintiff to undergo a visual body cavity search under the circumstances violated any established constitutional right, Defendants are entitled to qualified immunity. *Accord Dotson v. Wilkinson*, 477 F. Supp.2d 838, 850 (N.D. Ohio 2007) (granting Rule 12(b)(6) motion to dismiss on qualified immunity grounds to defendants sued in their individual capacities, where inmate had not demonstrated any constitutional violation under the Eighth Amendment).

### b. Claim Against Chaplains Taylor and Palmer

Defendants are also entitled to qualified immunity on Plaintiff's First Amendment claim. Although the undersigned has determined that dismissal is warranted based upon

Plaintiff's failure to adequately state this claim, the Defendants could not be expected to know based upon established case law, that the complained-of policy restricting Plaintiff from attending multiple weekly services while housed in segregation, violated the First Amendment. Aside from case law that supports the conclusion that Plaintiff has not established a constitutional violation due to his failure to allege that attendance at multiple services was a central tenet of his faith, courts have widely upheld similar policies under a *Turner* analysis. *See, e.g., O'Lone, supra*; *Reischauer v. Jones*, 2009 WL 232625, at *7 (W.D.Mich.2009) (holding that failure to provide access to group religious service to Muslim inmate in segregation did not substantially burden his right to practice his religion); *Williams v. Miller*, 696 Fed. Appx. 862 (10th Cir. 2017) (upholding regulation preventing any maximum security inmates from attending group services); *Muwwakkil v. Johnson*, 2010 WL 3585983 (W.D. Va. Sept. 13, 2010) (upholding limitations on religious property and prayer services)

> Where an inmate is "not deprived of all forms of religious exercise, but instead freely observe[s] a number of [his] religious obligations," the prison regulation is reasonable. … Similarly, …in inquiring whether there are alternative means to allow a prisoner to exercise his right, the right should be broadly construed to include "general religious activity." *Cooper v. Tard,* 855 F.2d 125, 129 (3d Cir.1988); *see Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (the right must be viewed "sensibly and expansively").

*Stroud v. Roth*, 741 F. Supp. 559, 562 (E.D. Pa. 1990) (internal citations omitted) (upholding policy prohibiting Muslim inmate in disciplinary or administrative segregation from physically attending services, where inmate was permitted to receive religious counseling, obtain religious materials, and view videotape of service). "A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded

14

sufficient means to do so." *Wali v. Woods*, 2005 WL 1185554, at *4 (W.D. Mo. 2005) (quoting *Murphy v. Missouri Dept. of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004)).

### C. Alternative Analysis of Defendants' Motion to Vacate Order on Motion for Leave to Proceed In Forma Pauperis (Doc. 17)

In addition to their motion to dismiss, Defendants have filed a motion to vacate this Court's prior order permitting Plaintiff to proceed in this case in forma pauperis, or without payment of a filing fee, under the Prison Litigation Reform Act. As a matter of law, Defendants' motion is well-founded because prisoners pay full filing fees in installments only during their incarceration. If a prisoner is released during the pendency of his or her lawsuit, the district court is required to make a new determination of "whether the released individual qualifies for pauper status" and/or should remain obligated to pay the remainder of any fees owed. *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1139 (6th Cir. 1997). Although Plaintiff maintains that he is still a pauper, this Court is unable to make the required determination without Plaintiff's submission of a new affidavit and the relevant (non-prisoner) application to proceed in forma pauperis.

However, given that the undersigned has recommended that Defendants' motion to dismiss this case be granted, the practical benefit of requiring Plaintiff to complete the referenced forms is likely to be nil, unless this Report and Recommendation is rejected. For that pragmatic reason, the undersigned has addressed Defendants' motion to revoke Plaintiff's pauper status as an alternative recommendation.

### III. Conclusion and Recommendations

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendants' motion to dismiss Plaintiff's complaint (Doc. 18) be **GRANTED**, and that all other motions (Docs. 13, 14, 17, 20) **be DENIED AS MOOT**. If the Court rejects the recommendation

15

that the motion to dismiss be granted, the undersigned **ALTERNATIVELY RECOMMENDS** that the Court grant Defendants' motion to vacate this Court's prior grant of Plaintiff's application to proceed in forma pauperis, pending a new determination based upon Plaintiff's submission of a new application to so proceed.

 /s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DANIEL P. HARGROVE,

    Plaintiff,

v.

CAPT. FRISBY, et al.,

    Defendants.
.

Case No. 1:17-cv-748

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).